NORTH JERSEY STREET RAILWAY COMPANY v. MAYOR AND ALDERMEN OF JERSEY CITY ET AL.

Argued February 26, 1906—Decided June 11, 1906.

1. The act of 1900 for the taxation of franchises of persons and corporations using or occupying public streets (*Pamph. L., p.* 502) is constitutional.
2. The franchise tax imposed by the act of 1900 is in the nature of a license tax, and not a tax upon property.
3. The franchises to use or occupy public streets which are subject to a franchise tax under the act of 1900 are not subject to a property tax under the General Tax act of 1903. *Pamph. L., p.* 394.

On *certiorari.*

Before Justices GARRISON, GARRETSON and SWAYZE.

For the prosecutor, *Frank Bergen* and *William D. Edwards.*

For Jersey City, *George L. Record* and *Robert Carey.*

The opinion of the court was delivered by

SWAYZE, J. The question involved in these cases is the right of Jersey City to levy a property tax upon the right, privilege, license or franchise of the prosecutors to lay and maintain street railway tracks and operate trolley cars thereon. The solution depends upon the construction of the Tax act of 1903. *Pamph. L., p.* 394. That act provides for the taxation of all property, real and personal, not expressly exempted by the act or excluded from its operation. Included in the property exempted from taxation are "all offices and franchises, and all property used for railroad and canal purposes, the taxation of which is provided for by any other law of this state." The word "officers" is a misprint for "offices," as appears by an inspection of the original act.

We think the last clause qualifies franchises as well as

property used for railroad and canal purposes, and that the exemption is only of franchises the taxation of which is provided for by another law.

It is settled in this state that franchises are property (*State Board of Assessors* v. *Central Railroad Co.,* 19 *Vroom* 146; *Newark* v. *State Board of Taxation,* 38 *Id.* 246), and the only just reason for exempting such property from the operation of the act is that it is subjected, in the opinion of the legislature, to .its fair share of the public burdens by other legislation. This result can only be secured by the construction we adopt.

The question, then, is whether the taxation of franchises is provided for by other legislation.

The act relied upon by the prosecutors is the so-called Voorhees act of 1900. *Pamph. L., p.* 502. That this act purports to tax the franchises of persons and corporations having the right to use or occupy the streets is not denied by the city. It is urged, however, that the act of 1900 is unconstitutional, and that, if it is constitutional, the percentage of the gross receipts required to be assessed is not a tax.

The act of 1900 has been before the courts in *Paterson and Passaic Gas and Electric Co.* v. *State Board of Assessors,* 40 *Vroom* 116; *affirmed,* 41 *Id.* 825, and its constitutionality was essential to justify the result reached in that case, but the question now presented was not raised, and we have therefore examined it without regard to that decision.

The objections to the constitutionality of the act are two —*first,* that a tax upon gross receipts is not a tax according to true value, as required by the constitution, for the reason that the percentage of gross receipts must be levied though the exercise of the franchise may actually involve a loss and the franchise may be of no value; *second,* that the act attempts to provide two different methods of taxation for the property of the corporation—one by local assessors according to its value, the other an arbitrary imposition by a state board. The first objection is fatal to the validity of the act if the franchise tax thereby imposed is a

property tax; if it is not a property tax, the second objection is without force.

We think the tax on gross receipts is not a property tax, but a license tax, imposed by the state as a condition precedent to the exercise of special privileges in the streets. We ought not, unless compelled, to adopt a construction which would make the act a clear violation of the constitutional requirement that property be assessed at its true value. That result of the city's contention is a potent argument for another construction. That the legislature did not intend the tax on gross receipts to be a property tax is indicated by the distinction made between property and franchises throughout the act. The title begins, "An act for the taxation of all the property and franchises," &c. Section 1 begins, "All the property, real and personal, and franchises," &c. Section 2 provides for the valuation and assessment of the property; section 4 provides for the valuation and section 5 for the assessment of the franchise; section 6 provides for the distribution of the franchise tax in proportion to the value of the property as assessed by local assessors. Throughout, a distinction is preserved between the property tax and the franchise tax. This distinction is emphasized by the provisions of section 7, which enacts that money paid to a taxing district, pursuant to contract, shall be considered a payment on account of the franchise tax imposed by the act; and by the provisions of section 8, which enacts that the franchise taxes imposed by the act shall be in lieu of all other franchise taxes now assessed against persons or corporations subject to the provisions of this act. We think it clear that the franchise tax was not intended to be a property tax. That impositions of this character may be imposed by way of a license tax is well settled. Such a tax is imposed by this state upon the general franchise to be a corporation, and has been sustained by the courts. *Standard Underground Cable Co.* v. *Attorney-General,* 1 *Dick. Ch. Rep.* 270; *Honduras Company* v. *Board of Assessors,* 25 *Vroom* 278; *Lumberville Bridge Co.* v. *Board of Assessors,* 26 *Id.* 529; *Marsden Company* v. *Board of Assessors,* 32 *Id.* 461.

The principle upon which such taxes are sustained is stated by Mr. Justice Field, in *Home Insurance Co. v. New York,* 134 *U. S.* 594, and his language was approved by this court in *Honduras Company v.* Board of Assessors, above cited. The grant of the privilege to be a corporation rests in the discretion of the state, and may be made upon such terms as the legislature sees fit to impose. Those terms are open to acceptance or rejection. In this respect the special franchise to use the streets does not differ essentially from the general franchise to be a corporation. It cannot be doubted that the legislature or a municipal corporation vested with power to grant or refuse its consent to the special privilege to use the streets may grant the privilege upon terms. *Jersey City and Hoboken Horse Railroad Co. v. Jersey City and Bergen Railroad Co.,* 6 *C. E. Gr.* 550.

In such a case the imposition may be regarded as in the nature of rent or purchase price for the privilege, but it may also be regarded as in the nature of a tax, subject to change by the legislature.

In the Lumberville Bridge Company case, the tax upon the franchise to be a corporation was imposed upon a corporation whose charter antedated the act of 1846, making charters subject to alteration by the legislature, which is now section 4 of the Corporation act. *Pamph. L.* 1896, *p.* 278. The tax was sustained by this court.

The same reasoning which justifies the special tax upon the general corporate franchise justifies a special tax upon the special franchise to use the streets, although that special franchise may antedate the imposition of the tax.

In *Memphis Gaslight Co. v. Taxing District of Shelby County,* 109 *U. S.* 398, the gaslight company had been granted, by its charter, enacted in 1851, the privilege of erecting, establishing and constructing gas works, and manufacturing and vending gas. Subsequently a license tax was imposed, which was attacked upon the ground that to permit the state to tax the company for the privilege granted by the charter was to permit it to destroy that privilege. The answer of the court, through Mr. Justice Miller, was that

the company took its charter subject to the same right of taxation in the state that applies to all other privileges and to all other property, and if it wished to have an exemption of any kind from taxation it should have required a provision to that effect in its charter.

A case similar to the present is *New Orleans City and Lake Railroad Co.* v. *City of New Orleans,* 143 *U. S.* 192, where a tax upon gross receipts was imposed upon a street railway which had bought its franchise of the city for a large sum several years before the enactment of the statute imposing the tax. The tax was nevertheless sustained.

The difference between a license tax and a property tax is well illustrated by the recent litigation growing out of the New York statute of 1899 for the taxation of franchises of this character. No question was raised in that case as to the right of the state to impose such a license tax. The question was whether it could, in addition, impose a property tax upon the value of the franchise, and the property tax was sustained. *Metropolitan Street Railway Co.* v. *New York,* 199 *U. S.* 1.

Whether valuable as property or not, the franchise is to be exercised upon such terms as the state may determine, and it is no objection that those terms take the form of an annual license tax. As a license tax it is not subject to the constitutional requirement that property shall be assessed according to its true value.

It is, however, urged that if the franchise tax is the compensation exacted by the state for the exercise of the franchise, it is not taxation within the meaning of the exemption clause of the act of 1903, but rather in the nature of purchase price or rent. We think this contention also untenable. The exaction is called a franchise tax by the legislature, and the word "taxation," in the act of 1903, must be given the same meaning as the same word in the title of the act of 1900. Whether the use of the word by the legislature is strictly accurate is of no moment; the legislature had the right to call its exaction "taxation."

As was said by the Court of Appeals of New York: "Both in statutes and in judicial decisions the term 'tax' is fre-

quently used in a much more comprehensive sense than that which we have stated to be its accurate meaning. It is not used so broadly as to include the revenue from private property, which the state or one of its political divisions may hold for emolument the same as other owners; but it certainly is used to comprehend exactions for the privilege of exercising franchise rights, which latter are often, especially in the case of foreign corporations, merely the consideration received for privileges which the state is at liberty to grant or to withhold, at pleasure." *Heerwagen* v. *Cross-Town Street Railway Co.*, 179 *N. Y.* 99.

We think the franchises sought to be taxed by Jersey City are franchises the taxation of which is provided for by another law, and that they are therefore not taxable as property under the act of 1903. It was for the legislature to determine whether the tax imposed by the act of 1900 was a fair apportionment of the public burden without subjecting the prosecutors to a property tax upon the value of the franchise in addition.

The taxes must be set aside, with costs.